UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                              Plaintiff,

                -v.-

$610,210 IN UNITED STATES CURRENCY,

                              Defendant-*in-rem.*

---

21 Civ. 4854 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

The United States of America (the "Government") commenced this civil *in rem* forfeiture action pursuant to 21 U.S.C. § 881(a)(6), seeking to forfeit $610,210 of funds seized from the apartment of Johnny De Los Santos ("Claimant") as proceeds of narcotics trafficking. Despite receiving notice of the deadline to challenge the forfeiture, Claimant did not timely file a claim as to the funds, and on August 24, 2021, the Court entered a judgment of forfeiture in the Government's favor.

Claimant now moves to vacate the judgment of forfeiture pursuant to Federal Rule of Civil Procedure 60(b), on the basis that his former attorney's failure to file a timely claim for the seized currency was the product of excusable neglect. Relatedly, Claimant seeks the Court's leave to file a belated claim and answer to the Government's complaint. Because an attorney's mere inattention to a clear deadline does not constitute excusable neglect, the Court denies Claimant's motion.

**BACKGROUND**[1]

**A.   Claimant's Criminal Case**

On or about October 16, 2020, Claimant Johnny De Los Santos, who has a prior felony conviction for a drug trafficking offense, was involved in an altercation involving a firearm at a store in the Bronx, New York.  (Compl. ¶¶ 5, 8).[2]  Following an NYPD investigation of the incident, on or about December 4, 2020, the Government swore out a Sealed Complaint before Magistrate Judge Katharine H. Parker, charging Claimant with being a felon in possession of a firearm.  (*Id.* at ¶¶ 5-9).  That same day, Judge Parker issued a warrant for Claimant's arrest.  (*Id.* at ¶ 9).

Approximately three weeks later, on December 28, 2020, law enforcement officers arrived at Claimant's residence to execute the arrest warrant.  (Compl. ¶ 10).  Upon entering the apartment, the officers performed a protective sweep, which revealed multiple bricks of United States currency wrapped in cellophane plastic, totaling approximately $600,000.  (*Id.*).  Also in plain view in the apartment was a bottle of "L427 Super Blu Industrial Grease,"

---

[1]    The facts set forth in this Opinion are drawn from the uncontested allegations contained in the Verified Complaint ("Compl." (Dkt. #1)), as well as from the parties' submissions in connection with Claimant's motion to vacate the judgment of forfeiture. These submissions include the Affirmation of Joseph Caldarera and the exhibits attached thereto ("Caldarera Aff., Ex. [ ]" (Dkt. #17)); the Affidavit of Johnny De Los Santos ("De Los Santos Aff." (Dkt. #14)); and the exhibits attached to the Government's opposition to Claimant's motion to vacate the judgment of forfeiture ("Gov't Ex. [ ]" (Dkt. #18)).

For ease of reference, the Court refers to Claimant's memorandum of law in support of his motion to vacate the judgment of forfeiture as "Claim. Br." (Dkt. #12); and the Government's opposition to Claimant's motion as "Gov't Opp." (Dkt. #18).

[2]    On December 5, 2012, Claimant pleaded guilty in the United States District Court for the District of Connecticut to conspiracy to possess with intent to distribute heroin and cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.  (Compl. ¶ 8).

a substance known to be used by drug traffickers to coat packages to mask the scent of narcotics from drug sniffing dogs. (*Id.* at ¶¶ 12-13). Subsequent testing of the seized currency revealed cocaine residue. (*Id.* at ¶ 11).

The same day Claimant was arrested, law enforcement agents obtained a search and seizure warrant, signed by Magistrate Judge Sarah L. Cave, permitting them to search Claimant's apartment and seize any evidence of narcotics violations. (Compl. ¶ 15). While executing this warrant, the agents located an additional approximately $10,000 of United States currency in a locked compartment behind a cabinet, as well as a bundle of a white substance containing heroin, a ledger containing entries consistent with narcotics trafficking, and a money counting device. (*Id.* at ¶¶ 16, 17).

Following his arrest, on February 25, 2021, a grand jury sitting in the Southern District of New York indicted Claimant for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). *See United States* v. *De Los Santos*, No. 21 Cr. 130 (PGG), Dkt. #7.[3]

---

[3]    Trial in Claimant's criminal case was set to begin on April 4, 2022, but was adjourned *sine die* on account of Claimant's fugitive status. *See United States* v. *De Los Santos*, No. 21 Cr. 130 (PGG), Dkt. #48. As detailed in the Government's adjournment request, dated March 24, 2022, Claimant was scheduled to appear for a change of plea hearing in his criminal case on March 18, 2022, but did not appear. *Id.* A warrant was subsequently issued for Claimant's arrest, and neither the Government nor Claimant's attorney in that action has made contact with him since. *Id.*

Claimant's present status naturally raises the specter of the fugitive disentitlement doctrine, pursuant to which a court "may decline to entertain the claims of a defendant who is a fugitive from justice." *United States* v. *Bescond*, 24 F.4th 759, 764 (2d Cir. 2021) (citations omitted). Under 28 U.S.C. § 2466, there are five prerequisites to disentitlement in a civil forfeiture action:

[i] a warrant or similar process must have been issued in a criminal case for the claimant's apprehension; [ii] the claimant must have had notice or knowledge of the warrant; [iii] the criminal case must be related to the forfeiture action; [iv] the claimant must not be

B.      **The Instant Forfeiture Action**

On or about January 26, 2021, Claimant received a "Notice of Seizure and Information to Claimants - JF Form" from United States Customs and Border Protection ("CBP"), notifying him that the Government had initiated administrative proceedings to forfeit the currency seized from his apartment. (De Los Santos Aff. ¶ 2; Def. Ex. 1 ("JF Form")).  This form advised Claimant that, among other options, he could elect to have this forfeiture matter "referred to the U.S. Attorney for institution of judicial forfeiture proceedings[.]" (JF Form at 4).[4]  With the help of Lorraine Belostock, his retained counsel at the Law Offices of Robert Tsigler, Claimant completed the paperwork indicating his decision to institute judicial forfeiture proceedings and mailed it to CBP on or about February 23, 2021.  (*Id.* at 6-8; De Los Santos Aff. ¶ 4).

The Government commenced this forfeiture action on June 1, 2021, seeking forfeiture of the $610,210 that was seized from Claimant's apartment. (Dkt. #1).  By letter dated June 10, 2021, the U.S. Attorney's Office for the

---

confined or otherwise held in custody in another jurisdiction; and [v] the claimant must have deliberately avoided prosecution by … evading the jurisdiction of a court in the United States in which a criminal case is pending against the claimant.

*Collazos* v. *United States*, 368 F.3d 190, 198 (2d Cir. 2004); *see also* 28 U.S.C. § 2466.

The record of Claimant's criminal case suggests that the requirements of Section 2466 may, indeed, be satisfied.  Nonetheless, the Court determines, in its discretion, not to dismiss Claimant's motion on disentitlement grounds.  *See Collazos*, 368 F.3d at 198 ("[T]he ultimate decision whether to order disentitlement in a particular case rests in the sound discretion of the district court.").  For one, the Government has neither briefed the issue, nor advised the Court that it deems Claimant to be a fugitive for the purposes of Section 2466.  What is more, application of the fugitive entitlement doctrine would not impact the ultimate outcome of this motion, as Claimant is not entitled to relief on the merits of his request.

[4]     The Court's pinpoint citations to the JF Form refer to the pagination generated by the Court's electronic case filing ("ECF") system.

Southern District of New York sent Claimant notice that it had instituted a civil action seeking forfeiture *in rem* of the currency seized from his apartment, and that he had 35 days from the date of the letter — until July 15, 2021 — to file a claim to contest the forfeiture.  (Def. Ex. 2 ("June 10 Notice"); De Los Santos Aff. ¶ 5).  Thereafter, on or about June 21, 2021, Claimant met with Ms. Belostock to discuss the forfeiture notice, who assured him that she would "take care of it."  (De Los Santos Aff. ¶ 6; Caldarera Aff. ¶¶ 11, 15). Notwithstanding her assurances, Ms. Belostock neglected to file a notice of claim by the deadline set forth in the June 10 Notice.  (Caldarera Aff. ¶ 16).

On or about July 23, 2021, Ms. Belostock resigned from the Tsigler firm. (Caldarera Aff. ¶ 13).  Prior to her departure, Ms. Belostock had left attorneys at the firm with the impression that she had obtained the Government's verbal consent to extend the time to file a claim beyond that stated in the June 10 Notice.  (*Id.* at ¶ 17).  On July 26, 2021, a paralegal at the Tsigler firm emailed the Assistant United States Attorney assigned to Claimant's criminal and civil forfeiture matters to confirm the firm's understanding that the Government had consented to an extension of time for Claimant to file a claim for the assets at issue in this forfeiture matter.  (Def. Ex. 3).  Shortly thereafter, the Government responded that it had not, in fact, consented to such an extension. (*Id.*; Caldarera Aff. ¶ 17).

On August 20, 2021, the Government moved for entry of a judgment of forfeiture regarding the currency seized from Claimant's apartment.  (Dkt. #6-7).  The Court held a conference on August 24, 2021, at which Joseph Matthew

Caldarera, another attorney at the Tsigler firm, appeared on behalf of Claimant and consented to the entry of a judgment of forfeiture. (Minute Entry for Aug. 24, 2021). Mr. Caldarera also indicated at this conference his intent to file a motion to vacate the judgment of forfeiture, along with a proposed claim and answer to the forfeiture complaint. (*Id.*). Following the conference, the Court set a briefing schedule for Claimant's anticipated motion and entered the Government's proposed judgment of forfeiture. (Dkt. #8).

On September 10, 2021, Claimant moved to vacate the judgment of forfeiture and simultaneously filed a proposed claim and Answer to the Complaint. (Dkt. #10).[5] The Government filed its opposition brief on October 1, 2021. (Dkt. #18). The briefing schedule permitted until October 8, 2021, for Claimant's reply brief, which has not been filed. Accordingly, the Court deems Claimant's motion to be fully briefed and ripe for consideration.

## DISCUSSION

Claimant seeks to vacate the forfeiture order on grounds of "excusable neglect" pursuant to Federal Rule of Civil Procedure 60(b)(1), so that he may belatedly file both a claim for the subject *res* and an answer to the Complaint. (Claim. Br. 1). The Government's principal argument in opposition to Claimant's request is that vacatur of the judgment would be futile because Claimant has failed to demonstrate "good cause" necessary to extend the deadline to file a claim contained in the applicable rules. (Gov't Opp. 5, 8-11).

---

[5]    Due to a docketing error, Claimant refiled his moving papers on September 22, 2021 (Dkt. #11-16), and again on October 1, 2021 (Dkt. #17).

Shorn of the ability to file a claim, Claimant would lack statutory standing to challenge the forfeiture, regardless of whether the judgment is vacated. The Government further contends that even if Claimant could establish statutory standing, the balance of relevant factors weighs against vacatur of the judgment of forfeiture. (*Id.* at 11-14).

The Court first analyzes the Government's primary argument, *i.e.*, whether Claimant has demonstrated "good cause" to file an untimely claim. Despite finding that Claimant is not entitled to an extension of this deadline, the Court also addresses, for completeness, whether Claimant's circumstances warrant vacatur of the judgment of forfeiture. Here too, Claimant falls short.

## A.    Claimant Has Failed to Demonstrate Good Cause to Extend the Deadline to File a Claim

### 1.    Applicable Law

The Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions govern civil forfeiture actions. *See United States* v. *Vazquez-Alvarez*, 760 F.3d 193, 197 (2d Cir. 2014). Pursuant to Supplemental Federal Rule of Civil Procedure G, after commencing a civil forfeiture action, "[t]he government must send notice of the action and a copy of the complaint to any person who reasonably appears to be a potential claimant[.]" Fed. R. Civ. P. G(4)(b)(i). This notice must provide certain information, including, among other things, "the date when the notice is sent," "a deadline for filing a claim, at least 35 days after the notice is sent"; and "that an answer or motion under Rule 12 must be filed no later than 21 days after filing the claim[.]" *Id.*, G(4)(b)(ii).

"In order to contest a governmental forfeiture action, claimants must have both standing under the statute or statutes governing their claims and standing under Article III of the Constitution as required for any action brought in federal court." *Vazquez-Alvarez*, 760 F.3d at 197 (quoting *United States* v. *Cambio Exacto, S.A.*, 166 F.3d 522, 526 (2d Cir. 1999)).  Under Rule G(5), any "person who asserts an interest" in the property that is the subject of a forfeiture action "may contest the forfeiture by filing a claim in the court where the action is pending." Fed. R. Civ. P. G(5)(a)(i).  Filing such a claim confers statutory standing under 18 U.S.C. § 983, the provision setting forth the general rules for civil forfeiture proceedings. *See* 18 U.S.C. § 983(a)(4)(A); *see also United States* v. *Technodyne LLC*, 753 F.3d 368, 380 (2d Cir. 2014) (discussing concept of statutory or "claim" standing).  Conversely, "[a] claimant who fails to comply with the procedural requirements of Forfeiture Rule G(5) may lose statutory standing" to oppose a civil forfeiture proceeding. *United States* v. *Four Hundred Seventeen Thousand, One Hundred Forty-Three Dollars & Forty-Eight Cents ($417,143.48)*, No. 13 Civ. 5567 (MKB), 2015 WL 5178121, at *5 (E.D.N.Y. Sept. 2, 2015) (citation omitted), *aff'd sub nom. United States* v. *$417,143.48, Four Hundred Seventeen Thousand, One Hundred Forty-Three Dollars & Forty-Eight Cents*, 682 F. App'x 17 (2d Cir. 2017) (summary order); *accord United States* v. *Conolly*, 694 F. App'x 10, 13 (2d Cir. 2017) (summary order).

"[C]ourts generally expect claimants to adhere strictly to the requirements of Forfeiture Rule G(5)." *$417,143.48*, 2015 WL 5178121, at *5

(internal quotation marks and alterations omitted).  The forfeiture rules do,
however, provide that courts may extend the time to file a claim for "good
cause."  Fed. R. Civ. P. G(5)(a)(ii).  With respect to untimely claims, "courts
generally permit a party to file a belated claim if the party demonstrates
excusable neglect for failure to timely file, in line with the standards set forth in
Rule 6(b)(1)(B) of the Federal Rules of Civil Procedure."  *$417,143.48*, 2015 WL
5178121, at *9 (collecting cases).[6]

"'[E]xcusable neglect' is an 'elastic concept,' that is 'at bottom an
equitable one, taking account of all relevant circumstances surrounding the
party's omission[.]'"  *Tancredi* v. *Metro. Life Ins. Co.*, 378 F.3d 220, 228 (2d Cir.
2004) (internal citation omitted) (quoting *Pioneer Inv. Servs. Co.* v. *Brunswick
Assocs. Ltd. P'ship*, 507 U.S. 380, 392, 395 (1993)).  In discussing this concept,
the Supreme Court has noted that "inadvertence, ignorance of the rules, or
mistakes construing the rules do not usually constitute 'excusable' neglect[.]"
*Pioneer*, 507 U.S. at 392.  With that said, "neglect may be excusable where the
language of a rule is ambiguous or susceptible to multiple interpretations, or
where an apparent conflict exists between two rules."  *Canfield* v. *Van Atta
Buick/GMC Truck Inc.*, 127 F.3d 248, 250 (2d Cir. 1997) (per curiam) (citing
*Pioneer*, 507 U.S. at 395).  The Supreme Court has additionally outlined four
factors for courts to consider when evaluating excusable neglect: "[i] the danger
of prejudice to the [non-movant], [ii] the length of the delay and its potential

---

[6]    Federal Rule of Civil Procedure 6(b)(1)(B) provides, "[w]hen an act may or must be done
within a specified time, the court may, for good cause, extend the time … on motion
made after the time has expired if the party failed to act because of excusable neglect."

impact on judicial proceedings, [iii] the reason for the delay, including whether it was within the reasonable control of the movant, and [iv] whether the movant acted in good faith." *Pioneer*, 507 U.S. at 395 (citation omitted).

The Second Circuit has noted that while "three of the factors usually weigh in favor of the party seeking the extension," it has primarily "focused on the third factor: 'the reason for the delay, including whether it was within the reasonable control of the movant.'" *Silivanch* v. *Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d Cir. 2003) (footnote omitted) (quoting *Pioneer*, 507 U.S. at 395). "Thus, in cases where the defaulting party failed to provide a compelling reason for its failure to comply with a clear deadline, the other factors are often not even considered." *FedEx TechConnect, Inc.* v. *OTI, Inc.*, No. 12 Civ. 1674 (RJS), 2013 WL 5405699, at *3 (S.D.N.Y. Sept. 23, 2013); *see also, e.g.*, *Pollard* v. *Does*, 452 F. App'x 38, 40 (2d Cir. 2011) (summary order) (affirming district court's finding of "excusable neglect" without considering prejudice to non-moving party); *Canfield*, 127 F.3d at 250-51 (analyzing only counsel's reason for missing deadline); *Weinstock* v. *Cleary, Gottlieb, Steen & Hamilton*, 16 F.3d 501, 503 (2d Cir. 1994) (finding reason for delay to be "most prominent" and dispositive factor in declining to find "excusable neglect" under the Federal Rules of Appellate Procedure).

### 2.    Analysis

Claimant's primary argument for relief on this motion is that his failure to satisfy the filing deadlines imposed by Rule G was due to his former attorney Ms. Belostock's "irrefutable failure" "to either timely file a claim for the money

seized or interpose an answer to the properly served Complaint, intentionally or otherwise." (Claim. Br. 1).  According to Claimant, "Ms. Belostock's dereliction [was] compounded by virtue of having misled colleagues into thinking that she had gotten verbal consent from the AUSA extending the time within which to file an answer on [his] behalf, when, in fact, she had not." (*Id.* at 4).  As unsettling as these allegations may be, they do not constitute "excusable neglect," as that term has been understood by the Supreme Court and the Second Circuit.

As noted, the Supreme Court has made clear that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." *Pioneer*, 507 U.S. at 392.  Extrapolating from this guidance, the Second Circuit has added that "the equities will rarely if ever favor a party who fails to follow the clear dictates of a court rule[.]" *Silivanch*, 333 F.3d at 366-67 (internal quotation marks omitted).  Moreover, "[w]here … the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test." *Canfield,* 127 F.3d at 251 (affirming district court's decision that attorney's failure to file motion papers within clearly established time limit was not excusable neglect under Rule 60(b)); *see also Pollard*, 452 F. App'x at 40-41 (affirming district court's finding that *pro se* plaintiff's failure to update his current address per court order, which caused him to miss the deadline to respond to court order he claimed not to receive, was not excusable neglect).

Here, Claimant has presented no circumstances that "excuse" his former attorney's neglect of the claim filing deadline.  In point of fact, Claimant concedes that the Government clearly communicated the applicable deadline in the June 10 Notice, which time limit his attorney simply flouted in "wholesale disregard for the clear and unambiguous statutory requirements set forth in Rule G." (Claim. Br. 6).  Rather than provide an explanation for Ms. Belostock's heedlessness, Claimant seeks to shirk personal responsibility by passing the buck to his former attorney.  (*See, e.g.*, *id.* at 7-8 (urging that "the Court should not find willfulness attributable to [Claimant]" because he "is doing what his previous counsel completely did not"); *id.* at 9-10 (asserting that "the failure to follow a rule of procedure was due to the actual neglect of [C]laimant's previous attorney," while Claimant "at every turn, intended and attempted to have his interest in the subject property protected"); *id.* at 10 (arguing that Ms. Belostock's "unprofessional failure should not be revisited on [Claimant]").

The issue for Claimant is that the Supreme Court has expressly rejected such a stark division of responsibility between a client and his attorney in civil litigation.  For example, in *Pioneer*, the Supreme Court reasoned that the focus of the inquiry to determine whether an attorney's inadvertent failure to file a proof of claim in a bankruptcy proceeding amounted to "excusable neglect" was "whether the neglect of respondents *and their counsel* was excusable." *Pioneer*, 507 U.S. at 397 (emphasis in original).  The Court in *Pioneer* endorsed the general principle "that clients must be held accountable for the acts and

12

omissions of their attorneys." *Id.* at 396.  This is so because "[a]ny other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'" *Id.* at 397 (quoting *Link* v. *Wabash R.R. Co.*, 370 U.S. 626, 633-34 (1962)).

Claimant (and current counsel) may well be frustrated with Ms. Belostock's inattentiveness to the clear deadline to file a claim and her ostensible attempt to deceive her colleagues into thinking the Government had consented to an extension of this deadline.  (De Los Santos Aff. ¶¶ 6-11; Caldarera Aff. ¶¶ 17-19).  Regardless of the details of Ms. Belostock's conduct, Claimant has not offered anything approaching a legally cognizable excuse for her neglect.  The thrust of Claimant's request for relief is that his stated intention to defend his claim to the property should be severed from his former attorney's conduct.  Yet, Claimant fails to explain why the equities of his case warrant deviation from Supreme Court precedent suggesting that clients cannot "avoid the consequences of the acts or omissions of [a] freely selected agent." *Pioneer*, 507 U.S. at 397 (quoting *Link*, 370 U.S. at 633-34).

Accordingly, the Court finds that prior counsel's mere neglect, without more, does not excuse Claimant's failure to meet the clear deadline to file a claim to the property seized in this action.  Claimant has therefore failed to demonstrate "good cause" necessary to waive the procedural dictates of Rule G, and may not file an untimely notice of claim or answer to the Complaint.

**B.     Claimant Is Not Entitled to Relief Under Rule 60(b)(1)**

The Court's determination that Claimant is not entitled to an extension of the deadline to file a claim defeats his statutory standing to challenge this forfeiture action.  As a result, regardless of the Court's decision on Claimant's vacatur motion under Federal Rule of Civil Procedure 60(b)(1), Claimant will be unable to challenge the forfeiture of the seized currency.  Nevertheless, for the sake of completeness, the Court addresses his related request for vacatur of the judgment of forfeiture.  For reasons similar to those just discussed, the Court denies Claimant's request for vacatur.

**1.     Applicable Law**

Motions for relief from a judgment under Federal Rule of Civil Procedure 60 are "committed to the 'sound discretion' of the district court," *Stevens* v. *Miller*, 676 F.3d 62, 67 (2d Cir. 2012) (citation omitted), and are generally granted only upon a showing of "exceptional circumstances," *Motorola Credit Corp.* v. *Uzan*, 561 F.3d 123, 126 (2d Cir. 2009).  Rule 60(b) enumerates several bases upon which courts may vacate a judgment or order, including if the judgment is a product of "mistake, inadvertence, surprise, or excusable neglect."  Fed. R. Civ. P. 60(b)(1).[7]

---

[7]     The Second Circuit has not been entirely clear with respect to the legal standard concerning motions to vacate judgments based on "excusable neglect."  *See FedEx TechConnect, Inc.* v. *OTI, Inc.*, No. 12 Civ. 1674 (RJS), 2013 WL 5405699, at *2-4 (S.D.N.Y. Sept. 23, 2013) (discussing the Second Circuit's varied approach in cases concerning Rule 60 motions asserting "excusable neglect").  In resolving such motions, the Second Circuit has applied two different tests, the first of which evaluates "excusable neglect" based on the Supreme Court's interpretation of that term in *Pioneer*.  *See id.* at *2-3.  The Court has already discussed this standard in addressing Claimant's argument regarding the existence of "good cause" to extend the claim filing deadline pursuant to Rule G(5).  *See supra* Discussion Section A.  Assuming this to be the applicable test, the Court sees no reason to diverge from its earlier conclusion that

14

When evaluating a Rule 60(b) motion to vacate a judgment for "mistake, inadvertence, surprise, or excusable neglect" in the default context, the Second Circuit has explained that, "courts have gone beyond the bare wording of the rule," and consider: "[i] whether the default was willful; [ii] whether defendant has a meritorious defense; and [iii] the level of prejudice that may occur to the nondefaulting party if relief is granted." *Wagstaff-EL* v. *Carlton Press Co.*, 913 F.2d 56, 57 (2d Cir. 1990) (internal quotation marks and citation omitted); *accord State St. Bank & Tr. Co.* v. *Inversiones Errazuriz Limitada*, 374 F.3d 158, 166-67 (2d Cir. 2004).[8] "[N]o single factor is dispositive." *FedEx TechConnect*, 2013 WL 5405699, at *4 (citations omitted). Where, as here, judgment is entered on default, courts must give the movant the benefit of any doubt, in accordance with the strong preference in this Circuit to decide disputes on the merits. *See United States* v. *$3,700 in U.S. Currency*, No. 04 Civ. 5944 (KMW),

Claimant has not shown excusable neglect, and thus does not rehash its findings on this point. In the remainder of this section, the Court will discuss the alternative approach that the Second Circuit has applied in assessing Rule 60(b) motions based on excusable neglect.

[8]   The Government queries whether the standard articulated in *Wagstaff-EL* is applicable to this case, which involves a judgment of forfeiture, rather than a default judgment pursuant to Federal Rule of Civil Procedure 55. (Gov't Opp. 12). In applying this test, the Court is guided by the nature of the underlying judgment of forfeiture, which was entered in the absence of any timely claims to the seized property, and the fact that other courts have applied this test in similar circumstances. *See, e.g., United States* v. *Conolly*, 694 F. App'x 10, 12-13 (2d Cir. 2017) (summary order) (employing three-factor test on appeal of a default judgment in forfeiture context); *United States* v. *Approximately One Hundred Sixty-Eight Thousand Fifty-Two Dollars & Twenty-Five Cents ($168,052.25) Seized from Northfield Bank Acct. No. 503501314 Held in the Name of Metro Sport N.Y. Corp.*, No. 14 Civ. 4219 (NGG) (RER), 2016 WL 1169242, at *4 (E.D.N.Y. Mar. 16, 2016) (applying three-factor test to Rule 60(b)(1) motion to vacate default judgment in forfeiture case), *report and recommendation adopted sub nom. United States* v. *Approximately One Hundred Sixty-Eight Thousand Fifty-Two Dollars*, 2016 WL 1266947 (E.D.N.Y. Mar. 31, 2016).

15

2011 WL 3502021, at *2 (S.D.N.Y. Aug. 9, 2011) (quoting *New York* v. *Green*, 420 F.3d 99, 104 (2d Cir. 2005)).

### 2.   Willfulness of Default

In determining if a party's default was willful, courts in this Circuit "will look for bad faith, or at least something more than mere negligence, before rejecting a claim of excusable neglect based on an attorney's or a litigant's error." *Am. All. Ins. Co., Ltd.* v. *Eagle Ins. Co.*, 92 F.3d 57, 60 (2d Cir. 1996); *accord United States* v. *All Funds on Deposit in Salomon Smith Barney Accts. No. XXX-XXXXX-XX-XXX, XXX-XXXXX-XX-XXX & XXX-XXXXX-XX-XXX*, No. 02 Civ. 5937 (TCP), 2006 WL 8441249, at *4 (E.D.N.Y. June 26, 2006).  That said, willfulness may be found where conduct is "egregious and ... not satisfactorily explained," such as when "an attorney failed, for unexplained reasons, to respond to a motion for summary judgment; or failed, for flimsy reasons, to comply with scheduling orders[.]"  *SEC.* v. *McNulty*, 137 F.3d 732, 738-39 (2d Cir. 1998) (citations omitted); *see also Todtman, Nachamie, Spizz & Johns, P.C.* v. *Ashraf*, 241 F.R.D. 451, 454 (S.D.N.Y. 2007) (finding default to be willful where defendant ignored a complaint), *aff'd*, 316 F. App'x 51 (2d Cir. 2009) (summary order).

On this standard, Claimant's failure to timely challenge the Government's civil forfeiture action was willful.  Claimant plainly missed the deadline to file a claim for the subject *res* and has no satisfactory explanation. As discussed above, Claimant seeks to hold Ms. Belostock singularly responsible for the entry of the forfeiture judgment, without affording any

16

insight into why she was inattentive to the case.  Claimant interposes his intention to "fight for the return of the money taken" and that Ms. Belostock "assured [him] that she would." (De Los Santos Aff. ¶ 10).  He further notes that he properly executed and returned the JF Form, which put the Government on notice of his intention.  (Claim. Br. 4-5).  However, once the Government initiated judicial proceedings, the record is clear that Claimant failed to satisfy the procedural requirements to assert his interest in the property.  Claimant's appeal to the obvious divergence between his desire to vindicate his rights and his former attorney's behavior does not make Ms. Belostock's unexplained neglect of the applicable deadline any less willful.

### 3. Meritorious Defense

"The existence of a meritorious defense is a key factor in the Rule 60(b) analysis." *Green*, 420 F.3d at 109.  The Second Circuit has held that "the absence of such a defense is sufficient to support [a] district court's denial" of a Rule 60(b) motion. *State St. Bank & Trust Co.*, 374 F.3d at 174.  To establish the existence of a meritorious defense, a defendant must present some evidence beyond mere conclusory denials. *See Pecarsky* v. *Galaxiworld.com Ltd.*, 249 F.3d 167, 173 (2d Cir. 2001).  The test is whether "the evidence submitted, if proven at trial, would constitute a complete defense." *Id.* (quoting *Enron Oil Corp.* v. *Diakuhara*, 10 F.3d 90, 98 (2d Cir. 1993)).  Though one need not "conclusively establish the validity of the defense asserted, [he or she] must, nonetheless, articulate a defense with a degree of specificity which directly relates that defense to the allegations set forth in the plaintiff's

17

pleadings and raises a 'serious question' as to the validity of those allegations." *FedEx TechConnect*, 2013 WL 5405699, at *8 (quoting *Salomon* v. *1498 Third Realty Corp.*, 148 F.R.D. 127, 130 (S.D.N.Y. 1993)).

To support his meritorious defense, Claimant relies on the various affirmative defenses contained in his proposed Verified Answer.  (Claim. Br. 8-9; Caldarera Aff., Ex. C ("Proposed Answer") at ¶¶ 15-20).  Claimant anticipates that these affirmative defenses will be borne out by discovery and asserts that the absence of such discovery "makes it both premature and speculative regarding whether he will be able to present evidence of facts constituting a complete defense[.]"  (Claim. Br. 9).  This argument subverts the relevant standard under Rule 60(b), which requires the movant to introduce specific evidence going toward showing that he has a meritorious defense at trial.  *See Pecarsky*, 249 F.3d at 173.

In relying solely on his responsive pleading, Claimant has failed to present evidence that convinces the Court that he may have a winning defense at trial.  Claimant alleges in his proposed answer, among other things, that law enforcement lacked probable cause to seize the currency from his apartment, that they did so pursuant to an invalid warrant, and that he was an innocent owner of property that may have been employed in criminal activity.  (Proposed Answer ¶¶ 15, 16, 20).  The Court admits of the possibility that these defenses may be valid.  However, beyond Claimant's bare assertions, it lacks any basis from which to draw that conclusion.  Claimant's affirmative defenses in his proposed responsive pleading are no more than conclusory allegations, and the

Rule 60(b) standard demands that he substantiates his defense with some evidence. Equipped only with averments in his proposed answer, Claimant has failed to demonstrate that he has a meritorious defense weighing in favor of vacating the judgment of forfeiture.

### 4. Prejudice

"The final factor a court must consider on a Rule 60(b) motion is whether[,] and to what extent, vacating the default judgment will prejudice the non-defaulting party." *Green*, 420 F.3d at 110. A showing of prejudice in this context requires more than just delay, "but also that the delay resulted in the loss of evidence, increased difficulty in discovery[,] or provided a greater opportunity for fraud and collusion." *Salomon Smith Barney Accts.*, 2006 WL 8441249, at *5 (citing *Davis* v. *Musler*, 713 F.2d 907, 916 (2d Cir. 1983)).

The Government has not argued that it would be prejudiced by vacatur of the judgment of forfeiture. Nonetheless, the Court does not believe that the absence of prejudice counsels in favor of granting Claimant's motion, where it has determined that Claimant's default was willful and that he lacks a meritorious defense. Indeed, other courts have denied Rule 60(b) motions in the forfeiture context with the same constellation of factors. *See, e.g.*, *United States* v. *Approximately One Hundred Sixty-Eight Thousand Fifty-Two Dollars*, No. 14 Civ. 4219 (NGG) (RER), 2016 WL 1169242, at *7 (E.D.N.Y. Mar. 16, 2016) ("Where, as here, it is established that the movant's default was willful and that he lacks a meritorious defense, no prejudice is required to be shown."), *report and recommendation adopted sub nom. United States* v.

*Approximately One Hundred Sixty-Eight Thousand Fifty-Two Dollars*, 2016 WL 1266947 (E.D.N.Y. Mar. 31, 2016); *Salomon Smith Barney Accts.*, 2006 WL 8441249, at *5 ("[I]f the defaulting party willfully defaults and has no meritorious defense, then the absence of prejudice against the non-defaulting party will not entitle the defendant to relief."); *see also McNulty*, 137 F.3d at 738 ("An absence of prejudice to the nondefaulting party would not in itself entitle the defaulting party to relief from the judgment.").

*   *   *

In sum, the Court finds that the balance of the relevant factors weighs against vacating the judgment of forfeiture under Rule 60(b)(1).  Claimant, via his former attorney, demonstrated a wholesale disregard for Rule G's procedural requirements, for which no satisfactory explanation has been provided.  Despite the large sum of money at stake in this case, Claimant has failed to present any evidence suggesting that he would be able to mount a successful defense if this case were to proceed to trial.  Notwithstanding the lack of demonstrable prejudice to the Government, the Court concludes that the "balance between serving the ends of justice and preserving the finality of judgments," *Piña* v. *United States*, No. 20 Civ. 1371 (PAE) (BCM), 2022 WL 782996, at *3 (S.D.N.Y. Mar. 15, 2022) (quoting *Nemaizer* v. *Baker*, 793 F.2d 58, 61 (2d Cir. 1986)), tips decidedly in favor of upholding the judgment of forfeiture.  Accordingly, Claimant's motion to vacate the judgment of forfeiture pursuant to Rule 60(b)(1) is denied.

**CONCLUSION**

For the forgoing reasons, Claimant's motion is DENIED.  The Clerk of

Court is directed to terminate all pending motions, adjourn all remaining dates,

and again close this case.

SO ORDERED.

Dated:      April 15, 2022
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge